Good afternoon, Your Honors. May I please report? Yes, and if you'd either speak a little louder or get a little closer to your mic, that'd be helpful. Can you hear me now?  Great. Thank you, Your Honor. By the way, my client's name is Gebretadkan, so you are very close. You are very close. And I would like to reserve too many of the names for my rebuttal. Try to watch the clock, but we'll help you. Thank you, Your Honor. Your Honors, my name is Michael Andy Georges, and I'm appearing on behalf of the petitioner. The record shows that substantial evidence does not support the BIA's adverse credibility findings. The credibility findings are based on speculation and conjecture, and therefore I'm asking the court to reverse the BIA findings. BIA is specifically limited to its adverse credibility findings. There's a possibility of one lack of detail, and I'll try to address the BIA's findings. Well, I'll tell you what would be helpful for me. It seems to me the strongest, I'm not saying how it comes out, but the strongest of the BIA's reasons seem to be about the interactions with Colombian authorities and what was sought or not sought in the way of protection there. Can you address that for me and tell me why that wouldn't support the credibility determination? Well, first thing is, Your Honor, when the court, when the judge asked my petitioner to explain the inconsistencies, the way the question was framed was, well, did you say this to the asylum officer? The IJ never said, well, you said this to the asylum officer, and today you're testifying this way. Can you explain the inconsistencies? Instead of giving that opportunity, all the IJ did was, well, you had this interview on that day, so did you make this statement? And the petitioner said, I did not, which is true. He did not make that statement. Although the judge should have said it, like, he should have given him that opportunity to explain and then give him that two different portions of evidence that would have an opportunity to explain the inconsistencies. On the second note of that as well, you should have noted three of them, Your Honor, the testimony before IJ and then the statement before the asylum officer. It has two parts. The second part is about the delay, and the first part is whether he applied, whether he was told he could apply, and whether he found someone who could help him apply to live in Colombia. And if you look at it, and given the fact that he was an interpreter and he was not ready, it was a great bad for him. He did not get a chance to correct. He did not get a chance to read the Q&A with the CBP. And that makes it very clear that, one, he never had an opportunity to review it. He did not sign it. He did not really know what the CBP officer was writing. He might certainly have to say that. Well, I understand that my reading is that he was fairly consistent throughout, and that he said he was told he could apply. Somebody was trying to help him. The only thing is when the note was taken at the CBP, it says that he applied for asylum. And again, IJ never gave him a chance. He was never offered an opportunity to explain the inconsistencies. He was not even brought to his attention. But did he say this statement to the asylum office? And he said, I did not. Are you – and I'll tell you, it is difficult to hear you. I'm doing my best, but if you can speak directly into that microphone, I think it may help us. But just to clarify, is it your position on this last point about the Columbia testimony and the credible fear, that there is no inconsistency at all among the three statements?  I mean, do you think that I'm having hearing of you or bringing up your honor? Can you hear me, your honor? It would be better if you spoke louder. We can't really control these connections, so I'm just going to have to ask you to speak a little louder. Your honor, I did not hear the question from Judge Brasler. Can you repeat that? Yes, the question is on this issue about the Columbian statements, about whether he applied for relief in Columbia. Is it your position that when you look at those three statements, they're actually not inconsistent in the first place? Is that part of what you're saying? Well, what I'm saying is that they appear inconsistent. However, the petitioner was not given an opportunity to explain the apparent inconsistency. He never had a chance to explain them. If you see the way the I.J. framed the question, all he said was that he didn't say this. He never said, I.J. did not say, well, he said this to the CBP officer. He didn't explain it, I think. He said, I didn't make that first statement, and the I.J. apparently didn't believe that. If you see that over there, what the I.J. said was, well, did he say this to the asylum officer, to the CBP officer? He did not bring up the inconsistency. Obviously, the petitioner did not know even though it was an inconsistent statement. Unless the I.J. brought that inconsistency, how was he supposed to understand the inconsistency? Well, but let's go back to Judge Brasler's question, because I'm not sure that your correct answer to it isn't yes. There are statements here about applying for relief and asylum, but I'm not sure he's ever inconsistent in the notion that he didn't make an application for asylum. He asked people if they could help him, he said, and that, I think, is applying for relief. But I'm not sure he ever makes a statement that he applied for asylum in Colombia. Do you agree? I agree. He never said that he applied for asylum in Colombia. That's the notion from the CBP officers. So, Judge Brasler, your answer to Judge Brasler's question, I think, is the statements aren't facially inconsistent. You're still left with the problem that he says he didn't make one of them, and the Customs and Border Patrol officer has him making it. But at least as to the issue about the statements conflicting, I'm not certain they do. Well, I agree, Your Honor. They don't conflict. But the point that I'm trying to make is, basically, Your Honor, he never had that opportunity to explain when the judge brought that up. That is the point that I'm trying to make. But I understand they were not inconsistent. You wanted to save some time for rebuttal. I told you I'd remind you, so is this a good time for you? Yes, Your Honor. Mr. Williams. Good morning. John Williams on behalf of the government. In this immigration case, the immigration judge found that the petitioner lacked credibility, and the board affirmed that the immigration judge's determination that the petitioner lacked credibility, and the agency cited specific incogent reasons, including inconsistencies, implausible testimony, a lack of detail, as well as omissions. I'm going to go to the Columbian, the issue regarding that, and then I'll come back, because the judges, you asked a number of questions. When you look at whether or not the petitioner applied for asylum and the statements regarding that, at Administrative Record 291, he told the Custom Borders Patrol asylum officer that he admitted that he applied for relief in Columbia. Applied for relief, correct? Yes. Applied for relief. Now, why isn't that consistent with his statement that when he spoke to the person in Columbia, he asked if there was some way they could help him? I'm not sure that's applying for asylum. Yeah, that's correct, but the judge went on to ask the petitioner at Administrative Record 166, on your trip to the United States, did you ever apply for asylum or other type of immigration relief in the country? And he said, no, he did not. But he later told, he also told during his credible fear interview that he met a person who said she would help with his applying for asylum relief. Right, but the second and the third statements seem very close. There's not much inconsistency. If there is any inconsistency, it's perhaps the first round, but he was asked about that. He said he didn't make that statement, and the IJ apparently just did not believe that. But it seems then that this whole issue just turns on the rest of the credibility determination, because the IJ didn't really explain why he didn't believe the denial about the first statement. So doesn't this just put us back to these other three grounds that the BIA recognized? Well, there are a myriad of other grounds. I just wanted to make one other statement with regard to this point what counsel said, and that was that the petitioner was provided opportunity to explain whether or not the inconsistency regarding the asylum. On the administrative record, page 167, after the immigration judge asked whether or not he applied for relief in Columbia, he asked counsel, do you have any follow-up for your client? And counsel said, I do not. He later asked counsel, do you rest now? And he said, I do. And then he was asked whether or not he would provide a closing statement just following these questions, and counsel indicated that he waived. But there are many other implausibilities and omissions in this record for which the immigration judge and the board arrested this case. You have two incidents, the June 2015 incident in which the petitioner exited a car despite known trouble and engaged the military when he indicated that he was knowledgeable that the military was causing harm to others. As I read the BIA's decision with respect to time in Ethiopia, it relied entirely on the failure to seek medical treatment. Am I wrong on that? Yes, Your Honor. The immigration judge noted in addition. I agree the IJ made a broader ruling. My question is, didn't the BIA only cite the failure to seek medical treatment? No, the board referenced collective information regarding the immigration judge's decision. If you look at page one of the immigration judge's decision. I want to know what the board did. I want to know what the board did. I understand the board had three or four reasons, but I'm focusing now simply on the time in Ethiopia. And I thought the board affirmed the judge because they found his testimony not credible with respect to seeking medical treatment. Is there any place else where the board finds his testimony not credible about what happened in Ethiopia? Yes. Generally, the board states in its decision. Specifically, the immigration judge relied on the inherent implausibility of respondents' testimony, the lack of detailed testimony and inconsistency. So it states that in this decision. It goes on to say that the petitioner claimed he was beaten by military forces in 2015, arrested and detained for a year. And so the board cites the actual full information, the incident, during that time in June 2015. I just don't think that's a clear reading of what the BIA said. Because when you look at the paragraph, the BIA is talking about whether it was implausible that he didn't get medical treatment. And when you combine that paragraph with the BIA's footnote, which says very clearly we're only relying on the grounds that we give. I don't think you can come in and try to defend the BIA decision based on the implausibility of the petitioner going up to the police and raising an issue with some of the things he saw. The IJ offered that, but the BIA, I don't see how you can read this to endorse that finding. Well, even if the court doesn't rest on those facts, you do have the implausible nature of the petitioner stating that he had been seriously harmed, beaten with the butt of a gun during the June 2015 incident. And following that, he didn't seek medical attention. Does the record indicate that medical attention was either necessary or available? It seems to me kind of speculative to say, well, you couldn't have been seriously injured because you didn't go to a doctor or some medical treatment when there's no real evidence that such was available. Or that he needed it. I mean, he drove away from the incident. There's not a record that would suggest he was in need of medical attention and didn't seek it. And and and so that that is the irony of this. You on the one hand, you have the petitioner stating that he was persecuted and that he was that he was beat severely. But the on the other hand, he says, but guess what? I was able to drive away without without needing medical attention. He follows that up with the February 2016 incident. And it's a similar situation. He is he spends a year detained. He outlines beatings, brutal beatings, allegedly that were so severe. But once again, following his his releases, his alleged escape, he he didn't seek medical treatment. And once again, it just seems speculative. I mean, there's no indication that the beatings he claims to have received happened any time near the point at which he escaped from the prison van. So there's not a record that would support this finding. I don't I just don't see that. The the beatings occurred over a period of time. He does state that he requested medical medicine from a friend. So there is some indication on his own accord that he needed some type of medicine, some type of treatment. But then he doesn't want to seek professional medical treatment. So right now, my recollection on this, how quickly did Petitioner leave the country after escaping? I'm not entirely clear how much time expired from his escape until he went to Djibouti. But my impression from reading the record was he he fled the country as soon as he escaped or relatively quickly after he escaped. So it seems to me perfectly logical that if you're fleeing the authorities after escaping, you're not going to stop on the way to try to get medical treatment. Well, it that that depends. In this instance, we're talking about the the board and the IJ sensing that this was implausible. And if he suffered such severe beatings, as he described, that he wishes to face a persecution claim on that, he's gone over in Oregon. The last question comes to. I'm sorry, it's always difficult when we're talking over each other on Zoom. But the question I have is when was the last beating in relation to the escape? It's unclear when the last meeting was. Doesn't that doesn't that present something of a difficulty for saying that when he escaped, it's implausible that he didn't seek medical attention at that point? No. Based on the based on a description of the beatings throughout the time, whether whether it was whether the beating when the beating was, when you when you place the multiple beatings that he's described one on top of the other, the immigration judge and the board looked at the totality of the circumstances and believed that it was implausible that at some point he wouldn't seek medical treatment. He's claiming that these beatings were so severe that he needed that that he wants to face a persecution claim on. In addition, the board did rest on his decision on a lack of detail for when he lived and another booty for almost a year. The board also went through and identified a lack of details. So you have inconsistencies, implausibilities, a lack of detail, which has been outlined by the board in this instance, a myriad of these things. They looked at the totality of the record and the government contends that the petitioner has not presented a compelling evidence to overturn the agency's decision. Substantial record evidence supports the board's decision that here you have possibilities, you have omissions, you have inconsistent statements and you have a lack of detail. When you take that in totality, counsel, we've you've gone over a bit, but I think we we understand your argument on that point. So maybe you can sum up very quickly. I would I would just sum up by stating that based on the totality of the record and this court's law in Rizk, which states that only that only one inconsistency, one item is needed to support adverse credibility determination that this court deferred to the agency's decision and deny the petition for review. Thank you. Thank you, counsel. We've got some time left for rebuttal. Have you unmuted yourself? Yes, Your Honor. Yes, Your Honor. Well, to get back to counsel's chance to answer your question, the petitioner stayed in Ethiopia about four days after he escaped from prison. He's on AR 132. He only stayed four days. And then the second point that I want to make is he did tell the judge that he was told he could apply for asylum in Colombia. That is on AR 165. The only time that he denied applying for asylum is when the judge asked him a statement that was read from the CVP notes. Not like the judge never said to the judge that I applied. I was told I could apply for asylum in Colombia. He did say that to the judge. It's 165. The challenge that I have with the judge's question is like the way the judge framed the question. It is sort of like pointing out the two discrepancies, simply asking him whether he applied for asylum in Colombia, whether he made that statement to the CVP officer. And clearly he said he did not. But in his mind, he is thinking like he never applied for asylum. He was told he could apply. He was finding people to help him to apply. Going through the asylum process in the United States, I'm sure he had some sense of what an asylum application process was. He did not go through that process. It is clear in his mind that what happened in Colombia is not that he applied for asylum in Colombia. And as far as the impossibility in Djibouti is concerned, Your Honor, we don't even know how much money he had on the record. We don't know. He had steady employment for 10 years in Ethiopia. He was traveling back and forth to Djibouti for like six years. And then there's nothing on the record, whether he paid rent, whether he stayed with family members, whether he stayed with friends. There's nothing. And then again, the DIJ never asked him more about his living conditions in Djibouti. All he was asked was, well, how did you support yourself in Djibouti and whether you applied for asylum. These are three questions that he was asked. And from these two questions, it will be very difficult to make implausible findings without giving him an opportunity to speak more about it. It's just like saying someone from Seattle did not live in Canada for one year with the savings that he had working in the United States for 10 years, without having more testimony about his life in Djibouti and about the savings. In addition, he testified that his mom was sending money to Djibouti. There is some testimony that his mother facilitated getting savings to him, but there's no testimony about the size of the savings. Is that fair? Nothing. Was he required to provide that? Well, he's not, but that doesn't allow the judge to speculate, to fill the gaps as well. You're at the end of your time. I want to ask my colleagues whether they have any more questions of either side. I do not. I do not. Then I thank you, thank both counsel for their arguments in this case, which will be submitted.
judges: Hurwitz, Bress, Corker